## NORTHWESTERN FIRE & MARINE INS. CO. v. SEABOARD SAND & GRAVEL CORPORATION et al.

### No. 11330.

District Court, E. D. New York.

May 11, 1932.

Purdy & Purdy, of New York City (by Edmund F. Lamb, of New York City), for libelant.

Foley & Martin, of New York City (by J. A. Martin, of New York City), for Seaboard Sand & Gravel Corporation.

Ernie Adamson, of New York City (by Nathan Feldman, of New York City), for Great Eastern Gravel Corporation.

CAMPBELL, District Judge.

This is an action to recover for damages caused by the breaking away during a storm of a deck scow, which was made fast alongside another scow at a buoy, and landing on a rock.

I find the facts as follows:

At all the times hereinafter mentioned and at the time of the trial, the libelant was a foreign corporation, organized and existing under and by virtue of the laws of the state of Minnesota.

At all the times hereinafter mentioned and at the time of the trial, the Exner Sand & Gravel Corporation was a domestic corporation, organized and existing under and by virtue of the laws of the state of New York, and was the owner of the deck scow Dick L., herein referred to.

Up to the time of the happening hereinafter described, the said deck scow Dick L. was tight, staunch, strong, and in every respect seaworthy.

At all the times hereinafter mentioned and at the time of the trial, the respondent Seaboard Sand & Gravel Corporation was a domestic corporation, organized and existing under and by virtue of the laws of the state of New York.

At all the times hereinafter mentioned and at the time of the trial, the respondent

Great Eastern Gravel Corporation was a domestic corporation, organized and existing under and by virtue of the laws of the state of New York.

At all the times hereinafter mentioned and for some time prior thereto, the respondent Great Eastern Gravel Corporation operated and controlled a certain dredge at Mt. Sinai, Long Island, where the said respondent loaded scows with gravel and sand.

In connection with said loading of its scows, and for the convenience in such loading of the respondents, Seaboard Sand & Gravel Corporation and Great Eastern Gravel Corporation, the said respondent Seaboard Sand & Gravel Corporation placed, and at all the times hereinafter mentioned owned, a certain mooring buoy on Long Island Sound about ½ mile off Mt. Sinai.

At the request of the said Exner Sand & Gravel Corporation, and for the convenience of the said corporation and the Great Eastern Gravel Corporation, the said respondent Seaboard Sand & Gravel Corporation gave the said Exner Sand & Gravel Corporation permission to use, or allow the Great Eastern Gravel Corporation to use, from time to time, the said buoy for mooring the scows of the Exner Sand & Gravel Corporation thereat, before and after loading by the Great Eastern Gravel Corporation, but without the payment of any wharfage, the said Exner Sand & Gravel Corporation being merely a licensee.

That during the times hereinafter mentioned and prior thereto, while said buoy was so placed, the said respondent Great Eastern Gravel Corporation, with the consent of the said Exner Sand & Gravel Corporation, placed some of the boats of the said Exner Sand & Gravel Corporation at said buoy before and after loading.

In connection with the aforesaid operations of its dredge at Mt. Sinai the respondent Great Eastern Gravel Corporation operated the steamtug Keating.

The said steamtug Keating was at all the times hereinafter mentioned, and for some time prior thereto, employed by the respondent Great Eastern Gravel Corporation in removing scows from Port Jefferson Harbor for loading at the aforesaid dredge of the Great Eastern Gravel Corporation located at Mt. Sinai, and in mooring scows when loaded to the buoy, and in some instances returning them to Port Jefferson.

That for some time prior thereto and until about 7:20 o'clock on the morning of the 18th day of September, 1928, when she was towed into Port Jefferson Harbor from Bridgeport, Conn., the said scow Dick L. was under charter from the Exner Sand & Gravel Corporation, its owner, to the above-named respondent Seaboard Sand & Gravel Corporation.

That on said morning of the 18th day of September, 1928, at about 7:20 o'clock, the said deck scow Dick L. was returned by the said respondent Seaboard Sand & Gravel Corporation to Exner Sand & Gravel Corporation, at Port Jefferson Harbor, and the said deck scow Dick L. was at that time tight, staunch, strong, and in every respect seaworthy.

On the said morning of the 18th day of September, 1928, after delivery by the said Seaboard Sand & Gravel Corporation to the Exner Sand & Gravel Corporation of the said deck scow Dick L., the said scow was, at about 8 o'clock a. m., at the direction of the respondent Great Eastern Gravel Corporation, taken in tow at the stakeboat owned and/or operated and maintained in Port Jefferson Harbor by the respondent Seaboard Sand & Gravel Corporation, by the steamtug Keating, and was thereupon, by direction of the respondent Great Eastern Gravel Corporation, towed by said steamtug out of the harbor of Port Jefferson to the aforesaid mooring buoy on Long Island Sound, off Mt. Sinai, where the said deck scow was, at about 10 o'clock a. m., moored by the said steamtug Keating on the easterly side of Bouker No. 71, lying at said mooring buoy, to await the convenience of the respondent Great Eastern Gravel Corporation in loading the said scow at its aforesaid dredge at Mt. Sinai.

The said mooring buoy lies on the waters of Long Island Sound, about ½ a mile offshore, in a position unprotected from the winds and seas, especially with an easterly or northeasterly wind.

When the steamtug Keating arrived at said buoy with the Dick L., the Bouker No. 50 was moored at the buoy and the Bouker No. 71 was made fast to and astern of the Bouker No. 50, both of which boats were loaded with stone to be used in building the breakwater, and were not under the control of the respondent Great Eastern Gravel Corporation.

The Dick L. was made fast on the easterly side of the Boucker No. 71 with bow and stern 4½ inch dock lines of manilla rope, about two months old.

The captain of the Dick L., a man of long experience on deep water vessels, and of some years' experience on scows, believed a storm was approaching when the Keating moved the Dick L. from the stakeboat in Port Jefferson Harbor, and had read in the paper in the early morning, before leaving Bridgeport, about a cyclone headed north.

There had been great wind disturbances in the South, both on Sunday, September 16th, and Monday, September 17th, and on Tuesday, September 18, 1928, at 9:30 o'clock a. m., northeast storm warnings north of Virginia Capes to Boston were displayed at the New York station of the Weather Bureau.

The president and general manager of the Great Eastern Gravel Corporation, a licensed master mariner, had read in the paper the night before about storms on the Atlantic seaboard, and that there was a hurricane in Florida, expected to pass out to sea at Hatteras.

The Bouker boats were loaded boats, not controlled by the Great Eastern Gravel Corporation. The Dick L. was light, and of necessity felt the force of the wind and wave to a greater extent than the loaded boats. The day was cloudy, and the wind, while it was not high, was all during the day from the north or northeast.

The Great Eastern Gravel Corporation received no storm warning that day and none was displayed where they were operating.

It generally received warnings through captains employed by the respondent Seaboard Sand & Gravel Corporation, but made no inquiry of any that day.

The Great Eastern Sand & Gravel Corporation had no telephone at the dredge, but the president and general manager, who lived in the vicinity, had a telephone in his house, but made no inquiry at the Weather Bureau Stations at New Haven or New York.

What the captain of the Dick L., an experienced man, considered were warnings of a storm continued, and the Dick L. was not taken in to the dredge for loading, because the custom was to load two boats at the same time, and the Seaboard No. 16 and a dumper scow were being loaded, but one pocket of the dumper scow leaked and had to be dumped out and this caused the delay.

About 7 o'clock p. m. on that day, the Seaboard No. 16 was moved out and made fast astern of the Bouker No. 71.

The tide was low at Port Jefferson Harbor at about 8 o'clock p. m., but the Dick L. was light and could have been taken in there at any time, but the steamtug Keating had been sent to Port Jefferson earlier in the evening, by the direction of the respondent Great Eastern Gravel Corporation, and did not return until it was too late, because of wind and sea, to have taken in the Dick L.

About 8 o'clock p. m. on that day, it having started to blow and make the sea choppy, and the captain of the Dick L., believing a severe storm was approaching, put out a 7½ inch towing hawser from the bow of the Dick L. to the bow of the Bouker No. 71, and also put a new 4½ inch dock line on the bow, and shifted the 4½ inch dock stern line from the Scow No. 71, and put it on the midship bitts of the No. 16, doubled up.

The wind and the sea continued to rise, and at about 2:30 o'clock a. m. on September 19, 1928, the storm broke. About 3 o'clock a. m., on the said 19th day of September, 1928, the bow hawser of the Dick L. first parted, followed by the 4½ inch bow dock line, and she swung around and the stern line parted and the Dick L. went adrift, with the wind then blowing 60 to 70 miles an hour.

The steamtug Keating, which was alongside the boats at the buoy, seeing that the Dick L. had broken adrift, made several attempts to get a heaving line aboard the Dick L. but was unsuccessful because of the heavy sea.

All this time the Dick L. was drifting toward Mt. Sinai, a sandy beach, where it went ashore at about 4 o'clock a. m., but a rising tide later carried the Dick L. along the beach, and at 3 o'clock p. m. on September 19, 1928, the Dick L. finally and definitely went ashore on a big rock near the breakwater at Port Jefferson Harbor, and became a total loss. The captain of the Dick L. saved his life but lost all of his effects. The Dick L. had a 150-pound anchor aboard which her captain tried to put over, but was unable due to the high seas, and with the high wind and sea, the anchor would in all probability have been useless if it had been put out.

The Bouker No. 71 and the Seaboard No. 16 also went adrift and went aground on the beach.

Nothing happened to the mooring buoy in question or to its anchor, and the Bouker No. 50, which did not go adrift, rode out the storm at the buoy without damage. The dumper scow which was moored at the dredger rode out the storm without injury.

■ The aforesaid loss and damage to the said deck scow Dick L., which resulted in her total loss and destruction, was caused or occasioned by perils of the sea, against which

the libelant insured the Exner Sand & Gravel Corporation, and on account of which the libelant has paid to the Exner Sand & Gravel Corporation the total loss on the said scow, and has thereby become subrogated to the rights of the Exner Sand & Gravel Corporation in the premises.

The libelant has paid and satisfied the Exner Sand & Gravel Corporation for the loss sustained, as hereinbefore set forth, and has thereby become subrogated to all the rights of the insured, and is the proper party to maintain this action.

No part of said sum has been paid to libelant or to the Exner Sand & Gravel Corporation although duly demanded.

The jurisdiction of this court is admitted.

On the facts as found, the Great Eastern Gravel Corporation was solely at fault.

The Seaboard Sand & Gravel Corporation was without fault, as the mooring buoy was not disturbed nor was its anchor or chains, and the only boat at the buoy whose lines held was the Bouker No. 50, and she rode out the storm without damage, moored to the said mooring buoy.

The Dick L. was not under charter to Seaboard Sand & Gravel Corporation on the 18th or 19th days of September, after she was delivered at about 7:20 a. m. on September 18, 1923, in Port Jefferson Harbor, to her owner Exner Sand & Gravel Corporation, and was not under the control of the Seaboard Sand & Gravel Corporation when moored at the buoy or when she was damaged.

It is true that the Seaboard Sand & Gravel Corporation originally paid the Exner Sand & Gravel Corporation for the charter hire for the day ending on September 19th one day too many, but this was corrected by a repayment to the Seaboard Sand & Gravel Corporation by Exner Sand & Gravel Corporation of the one day excess charter hire of the Dick L., which had been paid by mistake.

The Seaboard Sand & Gravel Corporation made no representations whatever to Mr. Exner, the president of the Exner Sand & Gravel Corporation, with reference to the mooring buoy in question, but at his request granted the Exner Sand & Gravel Corporation permission to moor, or to allow the Great Eastern Gravel Corporation to moor, the Exner Sand & Gravel Corporation boats from time to time at the stakeboat without payment of any wharfage.

The Exner Sand & Gravel Corporation, with reference to said mooring buoy, was a mere licensee, but in any event, no damage came to the Dick L. by reason of any defects in the mooring buoy or its anchor or chains.

The said Dick L. was under the control of the respondent Great Eastern Gravel Corporation from as early as the time she was moored out by the Keating from the stakeboat in Port Jefferson Harbor and during all the times hereinafter mentioned, and the Great Eastern Gravel Corporation was bound to exercise reasonable care for the safety of the Dick L. while under its control.

The said Dick L. was in all respects seaworthy and provided with good, strong lines and without motive power.

It is true that Mr. Exner, the president of the Exner Sand & Gravel Corporation, was familiar with the said mooring buoy, and not only consented to its use as a mooring place for his company's boats but secured the consent of the Seaboard Sand & Gravel Corporation to its use; but that did not excuse negligence on the part of the respondent Great Eastern Sand & Gravel Corporation.

The Dick L. with her 13 feet of freeboard when light, as she was on that day, presented too large a surface to the wind, in case of a gale, for her safety, and when it was found that there was no chance of loading her that day, she should have been placed in a safe berth and not have been left at the unprotected mooring buoy.

The situation presented by the Dick L. was very different from a boat that had been loaded and due to the condition of the tide could not be towed into the safe harbor of Port Jefferson, because the draft of the Dick L., which was light, was such that she could have been taken into the harbor, even at low tide, and should have been taken by the Keating when she went to Port Jefferson. There were seaboard tugs in Port Jefferson Harbor whose assistance was not requested by the respondent Great Eastern Gravel Corporation.

The weather conditions were and had been threatening, and with the continued north and northeast winds during all of the 18th of September, after the Dick L. was moved from Port Jefferson Harbor, and the knowledge of the storm conditions which the president and general manager of the Great Eastern Gravel Corporation had, through the papers and from his experience as a licensed

master mariner, he should have appreciated the danger threatened by the disturbed conditions of the wind at the South.

There was no Weather Bureau station at Mt. Sinai or Port Jefferson, and while it is the duty of all shifting and towing boats, and their owners and agents, to keep themselves informed of storm warnings, if posted where they can be readily obtained, it does not seem to me that, at places remote from Weather Bureau stations, the individual or corporation directing the loading of boats is under an obligation to ascertain such facts by calling up stations somewhat remote, where the wind conditions are radically different, if there are no indications of a storm at the place where the boat then is.

The conditions at Mt. Sinai on the day in question indicated an approaching storm, and the Great Eastern Gravel Corporation, through the knowledge that its president and general manager gained of weather conditions along the Atlantic coast line, from the papers the night before, and the threatening conditions on the day in question, which he as a master mariner should have understood, together with continued north and northeast winds, so put the said respondent on notice as to make it guilty of negligence in not having made an effort to ascertain what storm warnings had been issued, and in failing, until it was too late, to make the attempt to shift the Dick L. to a place of safety.

The captain of the Dick L., a boat without motive power, equipped with good lines, did all in his power to strengthen his lines and put out new lines, and likewise put out the anchor with which she was equipped, and the said scow and its owner, the Exner Sand & Gravel Corporation, were without fault.

I find as conclusions of law:

That the respondent Great Eastern Gravel Corporation, in whose care and custody and under whose control the Dick L. was from the time she was taken in tow in Port Jefferson Harbor, and during all the time hereinafter mentioned, by itself, its agents, servants, or employees, for whose actions it was responsible, negligently and carelessly, in the face of indications of an approaching storm, took the deck scow Dick L. in tow and moved her out of Port Jefferson Harbor and moored her at the unprotected and exposed mooring buoy on Long Island Sound, about ½ a mile off Mt. Sinai; and in the face of continued indications of an approaching storm, negligently and carelessly allowed the said deck scow Dick L. to remain at said unprotected and exposed mooring buoy until by the force of the wind and sea her lines parted and she went adrift, finally coming to rest on a large stone which broke her bottom, causing such damage that she became a total loss, and that said respondent Great Eastern Gravel Corporation was solely at fault.

That the respondent Seaboard Sand & Gravel Corporation was wholly without fault.

That the libelant, the Exner Sand & Gravel Corporation, and the deck scow Dick L., and all persons for whose actions they or either of them were responsible, did not in any way negligently cause or contribute to the damage to the deck scow Dick L.

That the libelant is entitled to a decree against the respondent Great Eastern Gravel Corporation, with interest and costs and the usual order of reference, and the respondent Seaboard Sand & Gravel Corporation to a dismissal of the libel with costs against the libelant.

That a decree may be entered in accordance with this opinion. Settle decree on notice.

If this opinion is not considered a sufficient compliance with rule 46½ of the Rules in Admiralty (28 USCA § 723), proposed findings of fact and conclusions of law in accordance with this opinion may be submitted for the assistance of the court as provided by the rules of this court.